1  LAWYERS FOR CLEAN WATER, INC.
2  Daniel Cooper (Bar No. 153576)
        Email:  daniel@lawyersforcleanwater.com
3  Caroline Koch (Bar No. 266068)
        Email:  caroline@lawyersforcleanwater.com
4  1004-A O'Reilly Avenue
5  San Francisco, California 94129
   Telephone:  (415) 440-6520
6  Facsimile:  (415) 440-4155
7  *Attorneys for Plaintiffs*
8  INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER
9
   *Additional Plaintiffs' Counsel Listed On Next Page*
10
11            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
12            ED   CV   14  -  00073
13  INLAND EMPIRE WATERKEEPER, a        Civil Case No.
    program of ORANGE COUNTY
14  COASTKEEPER; ORANGE COUNTY
    COASTKEEPER, a California non-profit   **COMPLAINT FOR DECLARATORY**
15  corporation,                          **AND INJUNCTIVE RELIEF AND**
                                          **CIVIL PENALTIES**
16
17            Plaintiffs,
       vs.
18
19  BURRTEC WASTE GROUP, INC., a         **(Federal Water Pollution Control Act,**
    California corporation; BURRTEC WASTE **33 U.S.C. §§ 1251 *et seq.*)**
20  INDUSTRIES, INC., a California
    corporation,
21
22            Defendants.
23
24
25
26
27
28

Complaint                          1

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@iewaterkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone:  (951) 530-8823
Facsimile:  (951) 530-8824


ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper" or "Plaintiffs"), by and through their counsel, hereby allege:

## I.    JURISDICTION AND VENUE

1.    This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.    On 8 October 2013, Waterkeeper issued a sixty (60) day notice letter of intent to sue ("Notice Letter") to Burrtec Waste Industries, Inc. and Burrtec Waste Group, Inc. (collectively "Defendants") for their violations of the Clean Water Act and California's Permit for Discharges of Stormwater Associated with Industrial Activities. The Notice Letter was also sent to the registered agent for Defendants, as required by 40 C.F.R. § 135.2(a)(1). Finally, the Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board") as required by the CWA. 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated herein by reference.

3.    More than sixty (60) days have passed since the Notice Letter was served on Defendants and the State and Federal agencies. Waterkeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

4.    Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are

1  located within this judicial district.

2  **II.    INTRODUCTION**

3      5.    This Complaint seeks relief for Defendants' substantive and procedural

4  violations of California's Permit for Discharges of Stormwater Associated with Industrial

5  Activities (National Pollution Discharge Elimination System General Permit No.

6  CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-

7  DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit")

8  resulting from their operations at 9890 Cherry Avenue, Fontana, California, 92335

9  ("Fontana Facility").

10     6.    Waterkeeper specifically alleges that Defendants' discharges of pollutants

11 from the Fontana Facility into waters of the United States; violations of the filing,

12 monitoring and reporting, and best management practice requirements; and violations of

13 other procedural and substantive requirements of the Storm Water Permit and the CWA

14 are ongoing and continuous.

15     7.    With every storm event, hundreds of millions of gallons of polluted

16 rainwater, originating from industrial operations such as the Fontana Facility, pour into

17 area surface waters. The consensus among agencies and water quality specialists is that

18 storm water pollution accounts for more than half of the total pollution entering the

19 marine and river environments each year. Surface waters are ecologically sensitive areas

20 and, although pollution and habitat destruction have drastically diminished once-

21 abundant and varied fisheries, surface waters are still essential habitat for dozens of fish

22 and bird species as well as macro-invertebrate and invertebrate species. Storm water

23 contaminated with sediment, heavy metals, and other pollutants harm the special

24 aesthetic and recreational significance that surface waters have for people in surrounding

25 communities. Public use of area surface waters for water contact sports exposes many

26 people to toxic metals and other contaminants in storm water and non-storm water

27 discharges. Non-contact recreational and aesthetic opportunities, such as wildlife

28 observation, are also impaired by polluted discharges to those waters.

Complaint                                    4

## III.   PARTIES

### A.   Inland Empire Waterkeeper and Orange County Coastkeeper.

8.   Inland Empire Waterkeeper is a program of Orange County Coastkeeper. Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506.

9.   Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California. Orange County Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

10.   Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around the Santa Ana River watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters. To further these goals, Waterkeeper actively seeks Federal and State agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and others.

11.   Waterkeeper members use and enjoy the Santa Ana River and its tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, and engaging in scientific study, including monitoring activities.

12.   Discharges of polluted storm water and non-storm water from the Fontana Facility degrade water quality and harm aquatic life in the Santa Ana River and its tributaries, and impair Waterkeeper's members' use and enjoyment of those waters.

13.   The violations of the Storm Water Permit at the Fontana Facility are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Storm Water Permit and the CWA.

### B.   The Fontana Facility Owners and/or Operators.

14.   Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Industries, Inc. is an owner of the Fontana Facility.

15.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Industries, Inc. is an operator of the Fontana Facility.

16.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. is an owner of the Fontana Facility.

17.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. is an operator of the Fontana Facility.

18.     Waterkeeper refers to Burrtec Waste Industries, Inc. and Burrtec Waste Group, Inc. collectively as the "Fontana Facility Owners and/or Operators."

19.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. is an active corporation registered in California.

20.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Industries, Inc. is an active corporation registered in California.

21.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Burrtec Waste Industries, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

22.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Burrtec Waste Group, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

23.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. also operate four other industrial facilities located at: 988 North Waterman Canyon Road, Crestline, California 92325; 5455 Industrial Parkway, San Bernardino, CA 92407; 1830 Agua Mansa Road, Riverside, California, 92509; and 13373 Napa Street, Fontana, California 92335 ("Burrtec Facilities").

24.     Plaintiffs seek relief for the unlawful discharges of pollutants into waters of the United States from Defendants' activities at the Burrtec Facilities in separate complaints filed with the Court. These matters are related, as they also allege violations of the Storm Water Permit against Burrtec Waste Group, Inc. and Burrtec Waste

1   Industries, Inc., as well as other operators of the Burrtec Facilities. Waterkeeper will file

2   a Notice of Related Cases as soon as practicable.

3   **IV.    LEGAL BACKGROUND**

4      **A.    The Clean Water Act.**

5      25.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the

6   discharge of any pollutant into waters of the United States unless the discharge complies

7   with various enumerated sections of the CWA. Among other things, section 301(a)

8   prohibits discharges not authorized by, or in violation of, the terms of a National

9   Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section

10  402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

11     26.    Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to

12  administer its own EPA-approved NPDES permit program for regulating the discharge of

13  pollutants, including discharges of polluted storm water.

14     27.    Section 402(b) of the CWA, 33 U.S.C. § 1342(b), establishes a framework

15  for regulating industrial storm water discharges under the NPDES program. States with

16  approved NPDES permit programs are authorized by section 402(b) to regulate industrial

17  storm water discharges through individual NPDES permits issued to dischargers and/or

18  through the issuance of a single, statewide, general NPDES permit applicable to all

19  industrial storm water dischargers. *See* 33 U.S.C. § 1342(b).

20     28.    In California, the State Board is charged with regulating pollutants to protect

21  California's water resources. *See* Cal. Water Code § 13001.

22     29.    The Storm Water Permit is a statewide general NPDES permit issued by the

23  State Board pursuant to section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R

24  § 123.25.

25     30.    In order to discharge storm water lawfully in California, industrial

26  dischargers must secure coverage under the Storm Water Permit and comply with its

27  terms, or obtain and comply with an individual NPDES permit.

28     31.    Violations of the Storm Water Permit are also violations of the CWA. *See*

1  Storm Water Permit, Section C(1).

2      32.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen

3  enforcement actions against any "person" who is alleged to be in violation of an "effluent

4  standard or limitation . . . or an order issued by the Administrator or a State with respect

5  to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

6      33.    Burrtec Waste Industries, Inc. is a "person" within the meaning of section

7  502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

8      34.    Burrtec Waste Group, Inc. is a "person" within the meaning of section

9  502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

10      35.    An action for injunctive relief is authorized under section 505(a) of the

11  CWA, 33 U.S.C. § 1365(a).

12      36.    Each separate violation of the Clean Water Act subjects the violator to a

13  penalty of up to $32,500 per day per violation for violations occurring prior to 12 January

14  2009, and $37,500 per day per violation for violations occurring on and after 12 January

15  2009. 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for

16  Inflation, 40 C.F.R. § 19.4.

17      37.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows

18  prevailing or substantially prevailing parties to recover litigation costs, including

19  attorneys' fees, experts' fees, and consultants' fees.

20  **B.    The Storm Water Permit's Effluent Limitations, Receiving Water**

21  **    Limitations, and Discharge Prohibitions.**

22      38.    Effluent Limitation B(3) of the Storm Water Permit requires dischargers to

23  reduce or prevent pollutants associated with industrial activity in storm water discharges

24  through the implementation of Best Available Technology Economically Achievable

25  ("BAT") for toxic or non-conventional pollutants and Best Conventional Pollutant

26  Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40

27  C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional

28  pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand

("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal coliform, among others.

39.     EPA's NPDES Multi-Sector General Permit for Stormwater Discharges Associated With Industrial Activity ("MSGP") sets numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

40.     The EPA Benchmarks provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and/or implemented. *See* MSGP Fact Sheet, at 95 (2008) *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

41.     Discharges from an industrial facility containing pollutant concentrations that exceed EPA Benchmarks indicate that the facility has not successfully developed and/or implemented BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants, in violation of Effluent Limitation B(3). *Id.*

42.     Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water and non-storm water discharges that adversely impact human health or the environment.

43.     Discharges with pollutant levels that exceed levels known to adversely impact human health and the environment are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

44.     Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water and non-storm water discharges that "cause or contribute to an exceedance of any applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

45.     Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and the EPA, to be protective of the beneficial uses of the waters that receive polluted discharges. The Water Quality Control Plan for the Santa Ana River Basin, California Regional Water Quality Control Board, Santa Ana Region, 3rd Ed. (Rev. June 2011) ("Basin Plan"), identifies the

"Beneficial Uses" of water bodies in the region.

46.    The Beneficial Uses for the Santa Ana River Reaches 1 -3 include: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened, or Endangered Species. *See* Basin Plan, Table 3-1.

47.    Discharges of pollutants at levels above WQS contribute to the impairment of the Beneficial Uses of the waters receiving the discharges.

48.    Surface waters that cannot support the Beneficial Uses of those waters listed in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d).

49.    The 2010 303(d) List of Impaired Water Bodies identifies Reach 2 of the Santa Ana River as impaired for indicator bacteria.[1]

50.    Reach 3 of the Santa Ana River, into which San Savaine Channel drains, is impaired for copper, lead, and pathogens. *Id.*

51.    WQS applicable to dischargers covered by the Storm Water Permit include, but are not limited to, those set out in the Basin Plan and the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

52.    The CTR includes numeric criteria set to protect human health and the environment in the state of California.[2]

53.    Discharges that cause or contribute to pollutant levels in receiving waters that exceed the CTR criteria, the Basin Plan, and/or other applicable WQS are violations of Receiving Water Limitation C(2) of the Storm Water Permit.

54.    Except as otherwise authorized, Discharge Prohibition A(1) of the Storm

---

[1] 2010 Integrated Report – All Assessed Waters, *available at*: http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on November 1, 2013).
[2] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at* http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

Water Permit prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

55.     Unauthorized discharges of materials other than storm water (non-storm water) are violations of Discharge Prohibition A(1) of the Storm Water Permit.

**C.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements.**

56.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

57.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

58.     Section A(3) of the Storm Water Permit requires a discharger to identify the members of its on-site Storm Water Pollution Prevention Team and to indicate each team member's responsibilities in developing, implementing, and revising the SWPPP to ensure compliance with the Storm Water Permit.

59.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that indicates specified information, including, but not limited to: the facility boundaries; storm water drainage areas and directions of flow for each drainage area; on-site surface water bodies; nearby water bodies; areas of soil erosion; municipal storm drain inlets where the facility's storm water discharges may be received; the location of the storm water collection, conveyance, and discharge system; structural control measures that affect storm water discharges; an outline of all impervious areas of the

facility, including paved areas, buildings, covered storage areas, and other roofed structures; locations where materials are directly exposed to precipitation; locations where where significant spills or leaks have occurred; and all areas of industrial activity, including areas that are actual and potential pollutant sources.

60.     Section A(5) of the Storm Water Permit requires that the SWPPP include a list of significant materials handled and stored at the site. For each material identified on the list, the discharger must describe certain specified information, including locations where the material is typically stored, received, or handled, as well as typical quantities and frequency of the materials at the facility.

61.     Section A(9) of the Storm Water Permit requires the discharger to evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit.

62.     Sections A(9)(a)-(c) of the Storm Water Permit require that the discharger conduct an Annual Comprehensive Site Compliance Evaluation ("ACSCE Report") that includes a review of all visual observation records, inspection reports, and sampling and analysis results; a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system; a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented, and maintained, or whether additional BMPs are needed; and a visual inspection of equipment needed to implement the SWPPP.

63.     Section A(9)(d) of the Storm Water Permit requires that the ACSCE Report includes an identification of personnel performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any instances of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. If certification of compliance cannot be provided, the discharger must explain in the ACSCE Report why the facility is not in compliance with the Storm Water Permit. The ACSCE Report shall be submitted as part of the Annual Report specified in Section

1  B(14) of the Storm Water Permit.

2       64.    Section A(10)(a) of the Storm Water Permit requires a Facility to make

3  available its SWPPP upon request by a representative of the Regional Board.

4       65.    Section A(10)(b) of the Storm Water Permit requires a facility to submit a

5  SWPPP revision upon notice from the regional board or a local agency that the facility is

6  not in compliance with the Storm Water Permit.

7       66.    Section A(10)(d) of the Storm Water Permit requires a facility to revise and

8  implement the revised SWPPP within ninety (90) days after a facility operator determines

9  that its SWPPP is not in compliance with the Storm Water Permit.

10      **D.     The Storm Water Permit's Monitoring and Reporting Requirements.**

11      67.    Provision E(3) and Section B(1) of the Storm Water Permit require

12  dischargers to develop and implement a Monitoring and Reporting Program ("M&RP")

13  when industrial activities commence.

14      68.    The objectives of the M&RP are to ensure that BMPs have been adequately

15  developed, implemented, and revised if necessary, and to ensure that storm water and

16  non-storm water discharges are in compliance with the Storm Water Permit's Discharge

17  Prohibitions, Effluent Limitations, and Receiving Water Limitations. Storm Water

18  Permit, Sections B(2)(a) and B(2)(b).

19      69.    The M&RP aids in the implementation and revision of the SWPPP and

20  measures the effectiveness of BMPs to prevent or reduce pollutants in storm water

21  discharges. Storm Water Permit, Sections B(2)(c) and B(2)(d).

22      70.    Section B(2)(d) of the Storm Water Permit requires that the M&RP be

23  revised as necessary to ensure compliance with the Storm Water Permit.

24      71.    Section B(3) of the Storm Water Permit requires a discharger to conduct

25  visual observations of all drainage areas within the facility for the presence of authorized

26  and unauthorized non-storm water discharges. Observations under this section must occur

27  during daylight hours, on days with no storm water discharges, and during scheduled

28  facility operating hours.

72.     Section B(4) of the Storm Water Permit requires a discharger to conduct visual observations of storm water discharges during at least one storm event per month during the Wet Season (October 1 – May 1) in the first hour of discharge at each discharge location. Observations under this section must take place during daylight hours, when the discharge is preceded by at least three (3) days without storm water discharges, and during scheduled facility operating hours.

73.     Both Sections B(3) and B(4) of the Storm Water Permit require a discharger to record and document visual observations. Records of observation must describe the presence of any floating or suspended materials, O&G, discolorations, turbidity, odor, and the source of any pollutants observed during the visual observation. Dischargers must maintain records of visual observations that include the observation date, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. Furthermore, Sections B(3) and B(4) require that a discharger must revise a facility's SWPPP in order to rectify any instances of noncompliance observed during visual observations.

74.     Sections B(5) and (7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged at the facility.

75.     Section B(5)(a) of the Storm Water Permit requires dischargers to collect storm water samples during the first hour of discharge from the first storm event of the Wet Season and at least one other storm event during the Wet Season. All storm water discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events of the Wet Season and must explain in the Annual Report why the first storm event was not sampled. *Id.*

76.     Section B(5)(b) of the Storm Water Permit requires that sampling conducted pursuant to the Storm Water Permit occur during scheduled facility operating hours that

1  are preceded by at least three (3) working days without storm water discharge.

2     77.    Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze

3  each sample for pH, specific conductance ("SC"), TSS, and total organic carbon

4  ("TOC"). A discharger may elect to analyze for O&G instead of TOC.

5     78.    Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to

6  analyze each sample for toxic chemicals and other pollutants likely to be present in the

7  storm water discharged from the facility in significant quantities.

8     79.    Section B(5)(c)(iii) of the Storm Water Permit requires dischargers to

9  analyze storm water samples for additional parameters depending on the facility's

10  Standard Industrial Classification ("SIC") code, as indicated in Table D of the Storm

11  Water Permit. Facilities classified as SIC code 4953 (Hazardous Waste Treatment

12  Storage or Disposal Facilities) must analyze storm water samples for ammonia,

13  magnesium, chemical oxygen demand ("COD"), arsenic, cadmium, cyanide, lead,

14  mercury, selenium, and silver, in addition to parameters identified elsewhere in the Storm

15  Water Permit. Storm Water Permit, Table D, Sector K.

16     80.    Section B(14) of the Storm Water Permit requires that dischargers submit an

17  Annual Report to the applicable regional board by 1 July of each year. The Annual

18  Report must include a summary of visual observations and sampling results, an

19  evaluation of the visual observations and sampling and analysis results, laboratory

20  reports, the ACSCE Report specified in Section A(9), an explanation of why a facility did

21  not implement any activities required by the Storm Water Permit, and the records

22  specified in Section B(13).

23     81.    Section C(9) of the Storm Water Permit requires that all reports,

24  certifications, and other information required by the Storm Water Permit or requested by

25  a regional board be signed by an authorized representative of the facility's operators.

26     82.    Section C(10) of the Storm Water Permit requires any signatory subject to

27  Section C(9) to make the following certification: "I certify under penalty of law that this

28  document and all attachments were prepared under my direction or supervision in

Complaint                              15

1   accordance with a system designed to ensure that qualified personnel properly gather and
2   evaluate the information submitted. Based on my inquiry of the person or persons who
3   manage the system, or those persons directly responsible for gathering the information,
4   the information submitted is to the best of my knowledge and belief, true, accurate, and
5   complete. I am aware that there are significant penalties for submitting false information,
6   including the possibility of fine and imprisonment for knowing violations."

7      83.   Section C(11)(b) of the Storm Water Permit requires facility operators to
8   give advance notice to the regional board or local storm water agency of anticipated
9   noncompliance with the Storm Water Permit.

10     84.   Section C(11)(d) of the Storm Water Permit requires facility operators to
11  report any incidence of noncompliance with the Storm Water Permit at the time
12  monitoring reports are submitted. Reports of noncompliance must contain (1) a
13  description of noncompliance and its cause, (2) the period of noncompliance, including
14  exact dates and times, and if the noncompliance has not been corrected, the anticipated
15  time it is expected to continue, and (3) steps taken or planned to reduce a prevent
16  recurrence of the noncompliance.

17  **V.     FACTUAL BACKGROUND**

18     **A.     The Fontana Facility's Storm Water Permit Coverage.**

19     85.   Information available to Waterkeeper indicates that the State Board Storm
20  Water Multiple Application & Report Tracking System ("SMARTS") shows that the
21  State Board confirmed receipt of a Notice of Intent to Comply with the Terms of the
22  General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI")
23  for the Fontana Facility on 6 March 1992 ("1992 NOI Receipt").

24     86.   Information available to Waterkeeper indicates that the Fontana Facility
25  Owners and/or Operators submitted a second NOI to the Regional Board on 20 May 1997
26  ("1997 NOI").

27     87.   Information available to Waterkeeper indicates that the Fontana Facility
28  Owners and/or Operators submitted a third NOI to the Regional Board on 6 July 2012

Complaint                                    16

1   ("2012 NOI").

2        88.    The 2012 NOI identifies the Facility name and location as "Burrtec Fontana

3   Yard 9890 CHERRY Ave, Fontana, CA 92335."

4        89.    The 2012 NOI identifies the Facility operator as "Burtec Waste Industries,

5   Inc[.]"

6        90.    Information available to Waterkeeper indicates that SMARTS identifies the

7   Facility name and location as "Burrtec Fontana Yard, 9890 CHERRY Ave, Fontana,

8   California 92335."

9        91.    Information available to Waterkeeper indicates that SMARTS lists the

10  Fontana Facility's coverage under the Storm Water Permit as "Active."

11       92.    The 2012 NOI and SMARTS list the Fontana Facility Waste Discharger

12  Identification Number ("WDID") as 8-36I000268.

13       93.    The 1997 NOI identifies the SIC code for the Fontana Facility as 4212

14  (Local Trucking, Without Storage).

15       94.    For facilities classified as SIC code 4212, the Storm Water Permit requires

16  permit coverage for the portions of the facility involved in vehicle maintenance

17  (including repair, rehabilitation, lubrication, painting and fueling) and other operations

18  associated with industrial activity. Storm Water Permit, Attachment 1, Section 8.

19       95.    The 1992 NOI Receipt and 2012 NOI identify the SIC code for the Fontana

20  Facility as 4953 (Hazardous Waste Treatment Storage or Disposal Facilities).

21       96.    A facility classified as SIC code 4953 requires Storm Water Permit coverage

22  for the entire facility. Storm Water Permit, Attachment 1, Section 4.

23       97.    Waterkeeper is informed and believes, and thereon alleges, that these

24  regulated industrial activities are conducted at locations throughout the entire Fontana

25  Facility and that the entire Fontana Facility requires Storm Water Permit coverage.

26       98.    Waterkeeper is informed and believes, and thereon alleges, that to the extent

27  industrial activities relating to SIC codes 4212 and/or 4953 are not conducted at locations

28  throughout the entire Fontana Facility, the entire Fontana Facility requires Storm Water

Complaint                                    17

1   Permit coverage because there are no BMPs at the Fontana Facility that separate the
2   storm water flows from portions of the Fontana Facility where non-regulated activities
3   may occur from storm water flows from the regulated industrial activities.

4        99.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana
5   Facility is approximately eleven (11) acres in size.

6        100.   The 2012 NOI indicates that the Fontana Facility owners and/or operators
7   applied for Storm Water Permit coverage for eleven (11) acres of the Facility.

8        **B.    Industrial Activities at the Fontana Facility.**

9        101.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana
10  Facility functions as a central location for Burrtec Waste Industries, Inc.'s offices, and for
11  maintenance and storage of vehicles and solids waste collection bins ("bins").

12       102.   Waterkeeper is informed and believes, and thereon alleges, that industrial
13  activities conducted at the Fontana Facility include, but are not limited to: storage of
14  vehicles and solid waste collection bins; maintenance of vehicles; maintenance of
15  equipment, such as the repair and painting of collection bins; vehicle and equipment
16  cleaning and fueling; storage of equipment and fuels; and hazardous materials storage.

17       103.   Waterkeeper is informed and believes, and thereon alleges, that hazardous
18  materials, including, but not limited to, motor oils, hydraulic/lubricant oil, degreasers,
19  paints, cleaning detergents, and solvents are stored at the Fontana Facility.

20       104.   Waterkeeper is informed and believes, and thereon alleges, that industrial
21  activities at the Fontana Facility are conducted outdoors and without cover.

22       105.   Waterkeeper is informed and believes, and thereon alleges, that outdoor
23  industrial activities at the Fontana Facility are conducted without secondary containment
24  or other measures to prevent polluted discharges from the Facility.

25       106.   Waterkeeper is informed and believes, and thereon alleges, that pollutants
26  associated with the Fontana Facility include, but are not limited to, O&G; metals,
27  including aluminum, copper, cadmium, chromium, lead, nickel, and zinc; TSS; nutrients,
28  including nitrogen and phosphorous; synthetic organic compounds; trash, debris and

1   floatables; and pathogens, including coliform bacteria.

2       107.   Waterkeeper is informed and believes, and thereon alleges, that sources of

3   pollutants at the Fontana Facility include, but are not limited to, truck and equipment

4   storage; hazardous waste storage; equipment and vehicle maintenance and repair; storage

5   of materials associated with vehicle and equipment maintenance and repair; and other

6   industrial activities.

7       108.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

8   Facility Owners and/or Operators have failed and continue to fail to adequately develop

9   and/or implement BMPs to prevent the exposure of pollutants and their sources to storm

10  water flows at the Fontana Facility.

11      109.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

12  Facility Owners and/or Operators have failed and continue to fail to adequately develop

13  and/or implement BMPs sufficient to prevent polluted storm water from discharging from

14  the Fontana Facility.

15      110.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

16  Facility Owners and/or Operators have failed and continue to fail to adequately develop

17  and/or implement required BMPs to prevent prohibited non-storm water discharges from

18  the Fontana Facility.

19      111.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

20  Facility Owners' and/or Operators' failure to properly address pollutants and their

21  sources results in the discharge of polluted storm water and/or non-storm water from the

22  Fontana Facility.

23      **C.    Discharge Locations at the Fontana Facility.**

24      112.   The Fontana Facility SWPPP indicates there is only one (1) discharge point

25  at the Facility, identified as "Monitoring Point 3."

26      113.   The Fontana Facility SWPPP indicates that Monitoring Point 3 is a notch

27  located near the southwest corner of the Fontana Facility.

28

Complaint                                        19

114.   The Fontana Facility SWPPP site map indicates that the Fontana Facility discharge points include storm water discharging along each side of the Facility's four (4) driveways ("Driveway 1-Driveway 4"), plus two (2) additional discharge points, including a drain outlet to Cherry Avenue located to the north of Driveway 1 and a drain outlet to Cherry Avenue located to the north of Driveway 4.

115.   The Fontana Facility's 2008-2009 and 2009-2010 Annual Reports indicate the presence of two (2) discharge points, identified as "Site 1" and "Site 2."

116.   Waterkeeper is informed and believes, and thereon alleges that a Regional Board inspection report, dated 14 November 2007, indicates the presence of three (3) discharge points at the Fontana Facility, which include Site 1, Site 2, and a third "from the East side of the truck maintenance garage."

117.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility has three (3) storm water clarifiers that drain to the sanitary sewer.

118.   Waterkeeper is informed and believes, and thereon alleges, that these discharge points, i.e., the above-listed discharge points other than Monitoring Point 3, are not identified in the Fontana Facility SWPPP as discharge points from the Facility.

119.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to collect storm water samples from all discharge points at the Facility.

**D.    The Fontana Facility's Discharges to the Receiving Waters.**

120.   Waterkeeper is informed and believes, and thereon alleges, that discharges from the Fontana Facility enter the San Sevaine Channel and flow to the Santa Ana River (collectively "Receiving Waters").

121.   Waterkeeper is informed and believes, and thereon alleges, that each of the Receiving Waters is a water of the United States, and/or a tributary to a traditionally navigable water.

122.   Waterkeeper is informed and believes, and thereon alleges, that polluted storm water and non-storm water discharges from the Fontana Facility to the Receiving

1    Waters.

2        123.   Waterkeeper is informed and believes, and thereon alleges, that polluted

3    discharges from the Fontana Facility contribute to the degradation of the Receiving

4    Waters, which are impaired surface waters, and adversely impact human health and the

5    environment.

6        124.   Waterkeeper is informed and believes, and thereon alleges, that samples of

7    storm water discharges collected at the Fontana Facility contain levels of pollutants,

8    including TSS, SC, O&G, copper, lead, zinc, and pathogens such as *E. coli* and coliform

9    bacteria, in excess of levels known to adversely impact aquatic species and the

10   environment, WQS, and EPA Benchmarks, in violation of the Storm Water Permit's

11   Effluent Limitations and Receiving Water Limitations.

12       125.   Exceedances of EPA Benchmarks indicate that the Fontana Facility Owners

13   and/or Operators have not developed and/or implemented adequate BMPs at the Facility

14   to achieve compliance with BAT/BCT standards, as required by the Storm Water Permit

15   Effluent Limitation B(3) and the Clean Water Act.

16       126.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana

17   Facility Owners and/or Operators have not developed or implemented sufficient BMPs to

18   reduce the levels of pollutants in the Fontana Facility storm water discharges to levels

19   that do not adversely impact human health or the environment, as required by Receiving

20   Water Limitation C(1).

21       127.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana

22   Facility Owners and/or Operators have not developed or implemented sufficient BMPs to

23   reduce the levels of pollutants in the Fontana Facility storm water discharges to levels

24   that do not cause or contribute to exceedances of applicable WQS, as required by

25   Receiving Water Limitation C(2).

26       128.  Waterkeeper is informed and believes, and thereon alleges, that each time

27   storm water has discharged from the Fontana Facility since 7 November 2008 through the

28   present, Fontana Facility Owners and/or Operators have discharged and continue to

Complaint                                    21

discharge storm water from the Fontana Facility that contains contaminants at levels that violate the Effluent and Receiving Water Limitations set forth in the Storm Water Permit.

### E.   Defendants' Prohibited Non-Storm Water Discharges.

129. Waterkeeper is informed and believes, and thereon alleges, that water is used for truck, vehicle, equipment, and/or parts washing at the Fontana Facility.

130. Waterkeeper is informed and believes, and thereon alleges, that water used for truck, vehicle, equipment, and/or parts washing at the Fontana Facility results in non-storm water discharges from the Facility to the Receiving Waters.

131. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have not obtained a separate NPDES permit for non-storm water discharges resulting from truck, vehicle, equipment, and/or parts washing at the Fontana Facility.

132. Waterkeeper is informed and believes, and thereon alleges, that BMPs have not been developed and/or implemented to prevent non-storm water from discharging from the Fontana Facility.

133. Waterkeeper is informed and believes, and thereon alleges, that prohibited non-storm water discharges from the Fontana Facility to the Receiving Waters in violation of Discharge Prohibition A(1).

### F.   Defendants' Failure to Comply with the Storm Water Permit's SWPPP Requirements.

134. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed to develop and implement a SWPPP before commencing industrial activities at the Facility, as required by Section A(1) of the Storm Water Permit.

135. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to list SWPPP team members and their responsibilities in the Facility SWPPP, as required by Section A(3) of the Storm Water Permit.

136. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility SWPPP site map does not include, among other issues, an outline of storm water drainage areas or identification of all discharge points associated with the Facility's storm water collection and conveyance system, as required by Section A(4) of the Storm Water Permit.

137. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility SWPPP does not include a list of significant materials handled and stored on site, or additional information related to significant materials, including the locations where each material is stored, received, shipped, and/or handled, as required by Section A(5) of the Storm Water Permit.

138. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed to produce a Facility SWPPP upon request by the Regional Board, as required by Section A(10)(a) of the Storm Water Permit.

139. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to revise the SWPPP after being notified by the Regional Board that the Facility's SWPPP does not meet the minimum requirements of the Storm Water Permit, as required by Section A(10)(b) of the Storm Water Permit.

**G.    Defendants' Failure to Comply with the Storm Water Permit's Monitoring and Sampling Requirements.**

140. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to conduct quarterly visual observations of the Facility's authorized and unauthorized non-storm water discharges, as required by Section B(3) of the Storm Water Permit.

141. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to adequately document and report visual observations of non-storm water discharges, as required by Section B(3) of the Storm Water Permit.

142.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to conduct monthly visual observations of storm water discharges during the first hour of discharge at all of the Facility's storm water discharge points, as required by Section B(4)(a) of the Storm Water Permit.

143.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to properly document and report visual observations of storm water discharges, as required by Section B(4)(a) of the Storm Water Permit.

144.  The Fontana Facility Owners and/or Operators failed and continue to fail to collect storm water samples from all of the Fontana Facility discharge locations, as required by Section B(5)(a) of the Storm Water Permit.

145.  The Fontana Facility Owners and/or Operators failed and continue to fail to collect storm water samples from two storm events per Wet Season and/or from the first storm event of the Wet Season, as required by Section B(5)(a) of the Storm Water Permit.

146.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to analyze all storm water samples collected for all required parameters, including for applicable parameters listed in Table D and for pollutants likely to be present in the Fontana Facility storm water discharges in significant quantities, as required by Section B(5)(c) and Table D of the Storm Water Permit.

**H.    Defendants' Failure to Comply with the Storm Water Permit's Reporting Requirements.**

147.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to submit Annual Reports that comply with Section B(14) of the Storm Water Permit.

148.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators failed and continue to fail to submit Annual Reports

1   signed by a duly authorized representative, as required by Sections B(14), C(9), and

2   C(10).

3      149.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

4   Facility Owners and/or Operators failed and continue to fail to conduct and submit

5   adequate ACSCE Reports, as required by Section B(14) of the Storm Water Permit.

6      150.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

7   Facility Owners and/or Operators failed and continue to fail to certify the information in

8   the Facility's Annual Reports, as required by Sections B(14) and C(10) of the Storm

9   Water Permit.

10      151.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

11   Facility Owners' and/or Operators' certifications of compliance with the Storm Water

12   Permit in the Facility's Annual Reports, when provided, are erroneous because the

13   Facility Owners and/or Operators have not revised the Facility SWPPP to achieve

14   compliance with the Storm Water Permit, as required by Sections A(9) and A(10) of the

15   Storm Water Permit.

16      152.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

17   Facility Owners' and/or Operators' certifications of compliance with the Storm Water

18   Permit in the Facility's Annual Reports, when provided,  are erroneous because the

19   Facility Owners and/or Operators have not revised the Facility M&RP to achieve

20   compliance with the Storm Water Permit, as required by Section B(2) of the Storm Water

21   Permit.

22      153.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

23   Facility Owners and/or Operators have failed and continue to fail to include a summary

24   or evaluation of their visual observations and sampling and analysis results in the

25   Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

26      154.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

27   Facility Owners and/or Operators failed and continue to fail to include laboratory reports

28   indicating the results of analyses of the Facility's discharges in the Facility's Annual

1 Reports, as required by Section B(14) of the Storm Water Permit.

2     155.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana

3 Facility Owners and/or Operators failed and continue to fail to describe instances of the

4 Facility's noncompliance with the Storm Water Permit in the Facility's Annual Reports,

5 or descriptions of steps take to prevent recurrence of such noncompliance, as required by

6 Section C(11)(d) of the Storm Water Permit.

7 **VI.    <u>CLAIMS FOR RELIEF</u>**

8 <u>**FIRST CAUSE OF ACTION**</u>

9 **Defendants' Discharges of Contaminated Storm Water in Violation of the**

10 **Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

11

12     156.  Waterkeeper incorporates the allegations contained in the above paragraphs

13 as though fully set forth herein.

14     157.  Waterkeeper is informed and believes, and thereon alleges, that storm water

15 containing levels of pollutants that does not achieve compliance with BAT/BCT

16 standards has discharged and continues to discharge from the Fontana Facility.

17     158.  Waterkeeper is informed and believes, and thereon alleges, that discharges

18 of storm water containing levels of pollutants that do not achieve compliance with

19 BAT/BCT standards from the Fontana Facility occur during every storm water discharge

20 from the Fontana Facility.

21     159.  The Fontana Facility Owners and/or Operators violate Effluent Limitation

22 B(3) of the Storm Water Permit each and every time storm water containing levels of

23 pollutants that do not achieve BAT/BCT standards discharges from the Fontana Facility.

24     160.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana

25 Facility Owners' and/or Operators' violations of Effluent Limitation B(3) of the Storm

26 Water Permit and the CWA are ongoing and continuous.

27     161.  The Fontana Facility Owners and/or Operators will continue to be in

28 violation of the Storm Water Permit and the CWA each and every time contaminated

1  storm water discharges from the Fontana Facility in violation of Effluent Limitation B(3)

2  of the Storm Water Permit.

3  162.   Each and every time the Fontana Facility Owners and/or Operators

4  discharge contaminated storm water from the Fontana Facility in violation of Effluent

5  Limitation B(3) of the Storm Water Permit is a separate and distinct violation of section

6  301(a) of the CWA, 33 U.S.C. § 1311(a).

7  163.   By committing the acts and omissions alleged above, the Fontana Facility

8  Owners and/or Operators are subject to an assessment of civil penalties for each and

9  every violation of the CWA occurring from 7 November 2008 to the present pursuant to

10  sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

11  164.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

12  § 1365(a). Continuing commission of the acts and omissions alleged above would

13  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

14  Waterkeeper has no plain, speedy, or adequate remedy at law.

15  WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

16  hereafter.

17  ### SECOND CAUSE OF ACTION

18  **Defendants' Discharges of Contaminated Storm Water in Violation of**

19  **Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act.**
   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

20

21  165.   Waterkeeper incorporates the allegations contained in the above paragraphs

22  as though fully set forth herein.

23  166.   Waterkeeper is informed and believes, and thereon alleges, that storm water

24  containing levels of pollutants that adversely impact human health and/or the

25  environment has discharged and continues to discharge from the Fontana Facility.

26  167.   The Fontana Facility Owners and/or Operators violate Receiving Water

27  Limitation C(1) of the Storm Water Permit each and every time storm water containing

28  levels of pollutants that adversely impact human health and/or the environment

1  discharges from the Fontana Facility.

2       168.  Waterkeeper is informed and believes, and thereon alleges, that the Fontana

3  Facility Owners' and/or Operators' violations of Receiving Water Limitation C(1) of the

4  Storm Water Permit and the CWA from the Fontana Facility are ongoing.

5       169.  The Fontana Facility Owners and/or Operators will continue to be in

6  violation of the Storm Water Permit and the CWA each and every time contaminated

7  storm water discharges from the Fontana Facility in violation of Receiving Water

8  Limitation C(1) of the Storm Water Permit.

9       170.  Each and every violation of Receiving Water Limitation C(1) of the Storm

10  Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

11  § 1311(a).

12       171.  By committing the acts and omissions alleged above, the Fontana Facility

13  Owners and/or Operators are subject to an assessment of civil penalties for each and

14  every violation of the CWA occurring from 7 November 2008 to the present pursuant to

15  sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

16       172.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.

17  § 1365(a). Continuing commission of the acts and omissions alleged above would

18  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

19  Waterkeeper has no plain, speedy, or adequate remedy at law.

20       WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

21  hereafter.

22                        **THIRD CAUSE OF ACTION**

23  **Defendants' Discharges of Contaminated Storm Water in Violation of Storm**

24  **Water Permit Receiving Water Limitation C(2) and the Clean Water Act.**

25              **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

26       173.  Waterkeeper incorporates the allegations contained in the above paragraph

27  as though fully set forth herein.

28       174.  Waterkeeper is informed and believes, and thereon alleges, that storm water

containing levels of pollutants that cause or contribute to exceedances of water quality standards has discharged and continues to discharge from the Fontana Facility.

175. Waterkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards from the Fontana Facility occur during every storm water discharge from the Fontana Facility.

176. The Fontana Facility Owners and/or Operators violate Receiving Water Limitation C(2) of the Storm Water Permit each and every time storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards discharges from the Fontana Facility.

177. Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners' and/or Operators' violations of Receiving Water Limitation C(2) of the Storm Water Permit and the CWA from the Fontana Facility are ongoing.

178. The Fontana Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Fontana Facility in violation of Receiving Water Limitation C(2) of the Storm Water Permit.

179. Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

180. By committing the acts and omissions alleged above, the Fontana Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

181. An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION

**Defendants' Discharges of Non-Storm Water in Violation of the Storm Water Permit's Discharge Prohibition A(1) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

182.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

183.   Waterkeeper is informed and believes, and thereon alleges, that prohibited non-storm water discharges have discharged and continue to discharge from the Fontana Facility in violation of Discharge Prohibition A(1) of the Storm Water Permit each time water used for truck, vehicle, equipment, and/or parts washing is not prevented from discharging from the Fontana Facility.

184.   Waterkeeper is informed and believe, and thereon alleges, that the Fontana Facility Owners' and/or Operators' violations of Discharge Prohibition A(1) are ongoing and continuous.

185.   The Fontana Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the Clean Water Act each and every time non-storm water discharges from the Fontana Facility to a water of the United States in violation of Discharge Prohibition (A)(1) of the Storm Water Permit.

186.   Each and every violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

187.   By committing the acts and omissions alleged above, the Fontana Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

188.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

§ 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION

**Defendants' Failure to Adequately Develop, Implement and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit Section A and Provision E(2) and Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

189.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

190.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to adequately develop a SWPPP for the Fontana Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

191.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to adequately implement a SWPPP for the Fontana Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

192.   Waterkeeper is informed and believes, and thereon alleges, that Fontana Facility Owners and/or Operators have failed and continue to fail to adequately revise a SWPPP for the Fontana Facility, in violation of Sections A(9) and A(10) of the Storm Water Permit.

193.   The Fontana Facility Owners and/or Operators have been in violation of Section A and Provision E(2) of the Storm Water Permit at the Fontana Facility every day from 7 November 2008 to the present.

194.   The Fontana Facility Owners' and/or Operators' violations of Section A and

1   Provision E(2) of the Storm Water Permit and the CWA at the Fontana Facility are

2   ongoing and continuous.

3       195.   The Fontana Facility Owners and/or Operators will continue to be in

4   violation of Section A and Provision E(2) of the Storm Water Permit and the CWA each

5   and every day the Fontana Facility Owners and/or Operators fail to adequately develop,

6   implement, and/or revise the SWPPP for the Fontana Facility.

7       196.   Each and every violation of the Storm Water Permit's SWPPP requirements

8   at the Fontana Facility is a separate and distinct violation of the CWA.

9       197.   By committing the acts and omissions alleged above, the Fontana Facility

10  Owners and/or Operators are subject to an assessment of civil penalties for each and

11  every violation of the CWA occurring from 7 November 2008 to the present, pursuant to

12  sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

13      198.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

14  § 1365(a). Continuing commission of the acts and omissions alleged above would

15  irreparably harm Waterkeeper and the citizens of the State of California, for which harm

16  Waterkeeper has no plain, speedy, or adequate remedy at law.

17      WHEREFORE, Plaintiffs pray for judgment against the Defendants as set forth

18  hereafter.

19  

**SIXTH CAUSE OF ACTION**

20

21  **Defendants' Failure to Adequately Develop, Implement, and/or Revise a
Monitoring and Reporting Program in Violation of the Storm Water Permit and
the Clean Water Act.**

22

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

23  

24      199.   Waterkeeper incorporates the allegations contained in the above paragraphs

25  as though fully set forth herein.

26      200.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

27  Facility Owners and/or Operators have failed and continue to fail to adequately develop

28  an M&RP for the Fontana Facility in violation of Section B and Provision E(3) of the

Storm Water Permit.

201.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to adequately implement an M&RP for the Fontana Facility in violation of Section B and Provision E(3) of the Storm Water Permit.

202.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana Facility Owners and/or Operators have failed and continue to fail to adequately revise an M&RP for the Fontana Facility in violation of Section B and Provision E(3) of the Storm Water Permit.

203.   The Fontana Facility Owners and/or Operators have been in violation of the Section B and Provision E(3) of the Storm Water Permit at the Fontana Facility every day from 7 November 2008 to the present.

204.   The Fontana Facility Owners' and/or Operators' violations of Section B and Provision E(3) of the Storm Water Permit and the CWA at the Fontana Facility are ongoing and continuous.

205.   The Fontana Facility Owners and/or Operators will continue to be in violation of Section B and Provision E(3) the Storm Water Permit and the CWA each and every day they fail to adequately develop, implement, and/or revise an M&RP for the Fontana Facility.

206.   Each and every violation of the Storm Water Permit's M&RP requirements at the Fontana Facility is a separate and distinct violation of the CWA.

207.   By committing the acts and omissions alleged above, the Fontana Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 7 November 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

208.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm

1    Waterkeeper has no plain, speedy, or adequate remedy at law.

2    WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

3    hereafter.

### SEVENTH CAUSE OF ACTION

**Defendants' Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

8    209.   Waterkeeper incorporates the allegations contained in the above paragraphs

9    as though fully set forth herein.

10    210.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

11    Facility Owners and/or Operators have failed and continue to fail to submit accurate

12    Annual Reports to the Regional Board in violation of Sections B(14), C(9), C(10) and

13    C(11) of the Storm Water Permit.

14    211.   Waterkeeper is informed and believes, and thereon alleges, that the Fontana

15    Facility Owners and/or Operators have failed and continue to fail to submit complete

16    Annual Reports to the Regional Board in violation of Sections B(14), C(9), C(10) and

17    C(11) of the Storm Water Permit.

18    212.   The Fontana Facility Owners' and/or Operators' violations of the reporting

19    requirements of the Storm Water Permit and the CWA are ongoing and continuous.

20    213.   The Fontana Facility Owners and/or Operators have been in violation of

21    Sections B(14), C(9), C(10), and C(11) of the Storm Water Permit and CWA every day

22    since at least 7 November 2008.

23    214.   By committing the acts and omissions alleged above, the Fontana Facility

24    Owners and/or Operators are subject to an assessment of civil penalties for each and

25    every violation of the CWA occurring from 7 November 2008 to the present pursuant to

26    sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

27    215.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

28    § 1365(a). Continuing commission of the acts and omissions alleged above would

Complaint                                    34

1  irreparably harm Waterkeeper and the citizens of the State of California, for which harm

2  Waterkeeper has no plain, speedy, or adequate remedy at law.

3       WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

4  hereafter.

5  **VII.   RELIEF REQUESTED**

6       216.  Plaintiffs respectfully request that this Court grant the following relief:

7       a.    A Court order declaring Defendants to have violated and to be in violation

8  of the Storm Water Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C.

9  § 1311(a), for their discharges of pollutants not in compliance with the Storm Water

10 Permit and violations of the substantive and procedural requirements of the Storm Water

11 Permit;

12      b.    A Court order enjoining Defendants from violating the substantive and

13 procedural requirements of the Storm Water Permit and the Clean Water Act;

14      c.    A Court order enjoining Defendants from discharging pollutants not in

15 compliance with a NPDES permit;

16      d.    A Court order assessing civil monetary penalties for each violation of the

17 CWA at $32,500 per day per violation for violations occurring from 7 November 2008

18 through 12 January 2009, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

19      e.    A Court order assessing civil monetary penalties for each violation of the

20 CWA at $37,500 per day per violation for violations occurring since 12 January 2009, as

21 permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

22      f.    A Court order awarding Plaintiffs their reasonable costs of suit, including

23 attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean

24 Water Act, 33 U.S.C. § 1365(d); and

25      g.    Any other relief as this Court may deem appropriate.

26

27

28 Dated: December 18, 2013              Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAWYERS FOR CLEAN WATER, INC.

_____

Daniel Cooper
Attorney for Plaintiffs
Inland Empire Waterkeeper and Orange
County Coastkeeper



Inland Empire Waterkeeper
Advocacy • Education • Restoration • Enforcement

6876 Indiana Avenue, Suite D
Riverside, CA 92506
Phone (951) 530-8823
Fax (951) 530-8824
Website www.iewaterkeeper.org

October 8, 2013

**VIA CERTIFIED MAIL**

Burrtec Waste Group, Inc.
9890 Cherry Avenue
Fontana, California 92335

Burrtec Waste Industries, Inc.
Attention: Managing Agent
9890 Cherry Avenue
Fontana, California 92335

**VIA U.S MAIL**

Cole Burr
Registered Agent
Burrtec Waste Group, Inc.
9890 Cherry Avenue
Fontana, California 92335

Cole Burr
Registered Agent
Burrtec Waste Industries, Inc.
9890 Cherry Avenue
Fontana, California 92335

**Re:    Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

I am writing on behalf of Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at 9890 Cherry Avenue, Fontana California 92335 ("Fontana Facility" or "Facility"). This letter is being sent to you as the responsible owners and/or operators of the Fontana Facility, or as the registered agent for those entities. This letter puts Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. (hereinafter referred to as the "Fontana Facility Owners and/or Operators") on notice of the violations of the Storm Water Permit occurring at the Fontana Facility including, but not limited to, discharges of polluted storm water from the Fontana Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the Fontana Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act.

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 2 of 17

in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act, (hereinafter "Notice Letter"), Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that after the expiration of sixty (60) days from the date of this Notice Letter, Waterkeeper intends to file an enforcement action in Federal court against them for violations of the Storm Water Permit and the Clean Water Act.

## I.   BACKGROUND

### A.  Inland Empire Waterkeeper and Orange County Coastkeeper

Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506. Inland Empire Waterkeeper is a chapter of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around San Bernardino County and the Santa Ana River watershed. Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Santa Ana River and its tributaries. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Waterkeeper use and enjoy the waters into which the Fontana Facility discharges into, including the Santa Ana River and its tributaries. Members of Waterkeeper use and enjoy the Santa Ana River and its tributaries to picnic, hike, view wildlife, and engage in scientific study, including monitoring activities, among other things. Procedural and substantive violations of the Storm Water Permit including, but not limited to, the discharge of pollutants from the Fontana Facility, impairs each of these uses. Further, these violations are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by the Fontana Facility Owners' and/or Operators' failure to comply with the Storm Water Permit and the Clean Water Act.

### B.  The Owners and/or Operators of the Fontana Facility

Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent ("NOI") to the State Water Resources Control Board ("State Board") to obtain Storm Water Permit coverage. *See* Storm Water Permit, Finding #3. Waterkeeper obtained 2 NOIs for the Fontana Facility and one State Board Receipt Letter for the Fontana Facility. The Receipt Letter is states that the Facility's NOI was approved on March 6, 1992, for Facility operator "Burtc Waste Industries Inc" and the Facility located at "Burtec Waste Industries Inc, 9890 CHERRY Ave, Fontana." One NOI is

Notice of Violation and Intent to File Suit
October 8, 2013
Page 3 of 17

signed by Bill Eden and dated May 20, 1997, and identifies the operator of the Facility as "Cole E. Burr" and the Facility name and location as "Rancho Disposal, 9890 Cherry Ave., Fontana, California 92335." A second NOI was obtained from the State Board, which is dated July 6, 2012, but is unsigned. This 2012 NOI identifies the Facility operator as "Burrtec Waste Industries, Inc.," located at "9890 Cherry Ave., Fontana, California 92335," and the Facility site name as "Burrtec Fontana Yard," located at "9890 Cherry Avenue, Fontana, California 92335." The Waste Discharge Identification ("WDID") number is listed as 8-36I000268.

Information available to Waterkeeper indicates that Burrtec Waste Industries, Inc. is an owner and/or operator of the Fontana Facility. Information available to Waterkeeper indicates that Burrtec Waste Group, Inc. is also an owner and/or operator of the Fontana Facility. Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. are active corporations registered in California. The registered agent for both corporations is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

The Fontana Facility Owners and/or Operators have violated and continue to violate the procedural and substantive terms of the Storm Water Permit including, but not limited to, the illegal discharge of pollutants from the Fontana Facility into local surface waters. As explained herein, the Fontana Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act.

### C. Storm Water Pollution and the Water Receiving Fontana Facility's Discharges

With every significant rainfall event, millions of gallons of polluted storm water originating from industrial operations such as the Fontana Facility pour into storm drains and local waterways. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. Such discharges of pollutants from industrial facilities contribute to the impairment of downstream waters and adversely impact aquatic-dependent wildlife. These contaminated discharges can and must be controlled for downstream ecosystems to regain their health.

Storm water discharges from hazardous waste treatment, storage or disposal facilities, like the Fontana Facility, contain pollutants such as: oil and grease ("O&G"); hydraulic fluids; transmission fluid; antifreeze; total suspended solids ("TSS"); heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; and nutrients. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm. Discharges of polluted storm water to the Santa Ana River and its tributaries pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The Fontana Facility discharges into the San Sevaine Channel,[3] which is a tributary to the Santa Ana River (collectively "Receiving Waters"). The Santa Ana River is an ecologically

---

[3] The Fontana Owners and/or Operators list San Sevaine Creek as the receiving water on their NOI, which is the same waterbody as the San Sevaine Channel.

sensitive area. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, the Receiving Waters still provide essential habitat for dozens of fish, bird, and invertebrate species. These pollutants harm the special aesthetic and recreational significance that the Receiving Waters has for people in the surrounding communities, including Waterkeeper's members. The public's use of the Receiving Waters for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to the Receiving Waters.

The California Regional Water Quality Control Board, Santa Ana Region Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for the Santa Ana River near or downstream of the point at which it receives polluted storm water discharges from the Fontana Facility by way of the San Sevaine Channel (i.e., Santa Ana River Reaches 1 – 3) include: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened, or Endangered species. *See* Basin Plan at Table 3-1. According to the 2010 303(d) List of Impaired Water Bodies, Reach 3 of the Santa Ana River, into which the San Sevaine Channel drains, is impaired for copper, lead, and pathogens, and Reach 2 of the Santa Ana River is impaired for indicator bacteria.[4] Polluted discharges from industrial sites such as the Fontana Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II. THE FONTANA FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A. Fontana Facility Site Description

The Fontana Facility is 11 acres and 80% impervious. A corporate office building is located near the center of the eastern boundary of the Facility, and to the north of the corporate offices is a public services office building. Employee and customer parking lots are located adjacent to the east, west, and north sides of the corporate offices, and adjacent to the east side of the public services office building. Two covered areas for vehicle and equipment maintenance are located along the northern border of the Facility. A wash rack is located adjacent to each of the covered maintenance areas. An uncovered area used for storage of vehicles, bins, and other equipment is located to the south and west of the covered vehicle and equipment maintenance areas. Finally, a vehicle fueling area that includes a covered fueling area and an uncovered compressed natural gas ("CNG") facility is located in the southwest portion of the Facility. There are four points of egress/ingress at the Facility, referred to in this Notice Letter as "Driveway 1" through "Driveway 4." Three driveways lead from the Facility to Cherry Avenue: Driveway 1 is the northernmost driveway, the next driveway to the south is Driveway 2, and Driveway 3 is the next driveway south. Driveway 4 is the southernmost driveway leading from the Facility to an

---

[4] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on July 8, 2013).

Notice of Violation and Intent to File Suit
October 8, 2013
Page 5 of 17

access road along the southern border of the Facility.

## B. Fontana Facility Industrial Activities and Associated Pollutants

According to information available to Waterkeeper, the Fontana Facility functions as a central location for Burrtec Waste Industries, Inc.'s offices, and for maintenance and storage of vehicles and solid waste collection bins ("bins"). The Fontana Facility's industrial activities are pollutant sources, and include, but are not limited to: maintenance of vehicles; maintenance of equipment, such as repair and painting of bins; vehicle and equipment cleaning operations; vehicle and equipment fueling; storage of vehicles, equipment, and fuels; bin storage; and hazardous materials storage, including motor oil, hydraulic/lube oil, degreasers, paints, cleaning detergents, and solvents.

The 1992 Receipt Letter for the Facility's NOI from the State Board lists the Standard Industrial Classification ("SIC") Code for the Facility as 4953 (Hazardous Waste Treatment Storage or Disposal). The Facility's 1997 NOI lists SIC Code as 4212 (Motor Freight Transportation and Warehousing) and the Facility's 2012 NOI lists the SIC Code again as 4953. The Storm Water Pollution Prevention Plan ("SWPPP") for the Facility, last revised in 2009, lists the SIC Code for the Facility as 4212.

For facilities classified as SIC Code 4212, the Storm Water Permit requires permit coverage for "vehicle maintenance shops, equipment cleaning operations, or airport deicing operations." Storm Water Permit, Attachment 1. The Storm Water Permit regulates the portions of the facility which are used for "vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified herein that are associated with industrial activity." Storm Water Permit, Attachment 1; *see also* Storm Water Permit, Attachment 4 (stating that "storm water associated with industrial activity" includes storm water discharges from material handling activities and storage areas for material handling equipment). Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that one or more of these regulated activities is conducted at locations throughout the entire Fontana Facility, and thus the entire Facility requires Storm Water Permit coverage. In addition, even if the regulated industrial activities are not occurring throughout the entire Facility at all times, under the Storm Water Permit's definition of "storm water associated with industrial activities" and explanation of material handling activities, Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that since no best management practices ("BMPs") or other controls exist to separate the storm water flows from portions of the Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities, storm water at the Facility commingles and thus, all storm water discharges from the Facility are regulated under the Storm Water Permit.

The pollutants associated with the Facility include, but are not limited to: O&G; metals, including aluminum, copper, cadmium, chromium, lead, nickel, and zinc; TSS; nutrientsm including nitrogen and phosphorous; synthetic organic compounds; trash, debris and floatables; and pathogens, including coliform bacteria.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 6 of 17

Information available to Waterkeeper indicates that storage of vehicles and equipment, storage of materials associated with vehicle maintenance and repair, and other industrial activities occur at the Fontana Facility outdoors without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other measures to prevent polluted storm water and non-storm water from discharging from the Fontana Facility. The resulting illegal discharges of polluted water impact Waterkeeper's members' use and enjoyment of the Receiving Waters by degrading the quality of the Receiving Waters and by posing risks to human health and aquatic life.

## C. Fontana Facility Storm Water Flow and Discharge Locations

The Fontana Facility site map indicates that a "water treatment system," which consists of a clarifier ("Clarifier 1") that empties to an underground "leach field," is located in the southwest corner of the Facility. Based on the direction of storm water flows indicated on the Facility site map, the employee parking lot located to the west of the corporate offices, the covered fueling area and uncovered CNG facility, and portions of the uncovered area used for storing vehicles and equipment drain to Clarifier 1 and the underground "leach field." According to the Fontana Facility SWPPP, the capacity of Clarifier 1 and the underground leach field is exceeded after collecting the "first-flush runoff." After the capacity of Clarifier 1 and the underground "leach field" is exceeded, storm water is discharged via a "notch" located near the southwest corner of the Facility, and/or via an overflow weir located approximately forty feet to the east of the notch.

According to Facility documents, the remaining portions of the vehicle and equipment storage area, the covered equipment and vehicle maintenance areas, and the wash rack adjacent to the maintenance area that is located near the northwest corner of the Facility drain to a second clarifier ("Clarifier 2") located near the northwest corner of the Facility. A third clarifier ("Clarifier 3") is located in the wash rack located adjacent to the covered maintenance area near the northeast corner of the Facility. According to the SWPPP, Clarifier 2 and Clarifier 3 drain to the sanitary sewer.[5] The SWPPP does not describe the capacities of these clarifiers, or to where they discharge when their capacities are exceeded.

The SWPPP states that there is only one discharge point at the Fontana Facility, which is named "Monitoring Point 3," that appears to be the notch located near the southwest corner of the Facility. Yet the 2007-2008 and 2008-2009 Annual Reports list 2 discharge points, identified as "Site 1" and "Site 2." However, the November 14, 2007, Regional Board inspection report indicates that there are at least 3 discharge points, presumably the 2 identified in the Annual Reports, and a third "from the east side of the truck maintenance garage." Moreover, the Fontana Facility site map indicates that storm water discharges along each side of the 4 driveways, from a drain outlet to Cherry Avenue located to the north of Driveway 1, and from a drain outlet to Cherry Avenue located to the north of Driveway 4.

---

[5] Industrial storm water discharges to municipal sanitary sewers require coverage under an Industrial Wastewater Discharge Permit. The Fontana Facility SWPP does not indicate whether the Fontana Facility Owners and/or Operators have received a permit from the City of Fontana to discharge to the city sewer.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 7 of 17

III.   **VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT**

A.   <u>Discharges of Polluted Storm Water from the Fontana Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit</u>

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of BMPs that achieve best available technology economically achievable ("BAT") for toxic pollutants[6] and best conventional pollutant control technology ("BCT") for conventional pollutants.[7] EPA's Industrial Storm Water Permit contains benchmark values, which are objective standards for evaluating whether a permittee's BMPs achieve compliance with BAT/BCT, as required by Effluent Limitation B(3) of the Storm Water Permit ("EPA Benchmarks").[8]

Storm water sampling at the Fontana Facility demonstrates that concentrations of pollutants in storm water discharges repeatedly exceed applicable EPA Benchmarks. Attachment A contains a table with the dates on which storm water discharges from the Fontana Facility since the 2008-2009 Annual Report exceed EPA Benchmarks. In addition, after an inspection was conducted at the Facility by the Regional Board in 2007, the Regional Board specifically put the Fontana Facility Owners and/or Operators on notice that BMPs must be developed **"immediately"** to address the exceedances of the EPA Benchmarks, and that actions taken to address the exceedances and other "non-compliance issues noted in the report must be submitted by January 31, 2008." Yet, information available to Waterkeeper indicates that no response was submitted, and based on continued exceedances of EPA Benchmarks, no action in response to the exceedances was taken.

The repeated exceedances of EPA Benchmarks demonstrate that the Fontana Facility Owners and/or Operators have failed to develop and/or implement required BMPs at the Fontana Facility that achieve compliance with the BAT/BCT standards. Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that they violate Effluent Limitation B(3) of the Storm Water Permit each time storm water discharges from the Facility without BMPs that achieve BAT/BCT including, but not limited to, the dates identified in Attachment A.[9] These violations are ongoing and will continue every time the Fontana Facility Owners and/or Operators discharge polluted storm water without developing and/or implementing BMPs that

---

[6] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper and lead, among others.
[7] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, O&G, pH, and fecal coliform.
[8] *See United States Environmental Protection Agency (EPA) National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (MSGP) Authorization to Discharge Under the National Pollutant Discharge Elimination System*, as modified effective May 27, 2009 ("Multi-Sector Permit"), Fact Sheet at 106; *see also*, 73 Federal Register 56572 (2008).
[9] For example, the Fontana Owners and/or Operators claim that the results of sampling submitted in the 2011-2012 and 2012-2013 Annual Reports are not from discharges from the Facility but rather were taken to evaluate the effectiveness of the BMPs. Thus, whether the storm water sampled actually left the facility or not, the results demonstrate BAT/BCT is not being achieved at the Facility.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 8 of 17

achieve compliance with the BAT/BCT standards. Waterkeeper will update the dates of violations when additional information and data become available. Each time the Fontana Facility Owners and/or Operators discharge polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

**B.**  **Discharges of Polluted Storm Water from the Fontana Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit**

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or groundwater that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable Water Quality Standard ("WQS").[10] Applicable WQS include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). The Basin Plan sets out additional WQSs, including WQSs for total coliform and fecal coliform when the Beneficial Uses of a lake or stream include Municipal and Domestic Supply, Non-contact Water Recreation, and Water Contact Recreation, such as the Receiving Waters. Discharges that contain pollutants in excess of an applicable WQS violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

Information available to Waterkeeper indicates that storm water discharges from the Fontana Facility contain elevated concentrations of pollutants such as copper, lead, zinc, and pathogens, including coliform bacteria and *Escherichia coli*, among others. The Receiving Waters are impaired for copper, lead, and pathogens. Information available to Waterkeeper indicates that storm water discharges from the Fontana Facility containing elevated concentrations of pollutants can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. Information available to Waterkeeper further indicates that storm water discharges from the Fontana Facility containing elevated concentrations of pollutants cause or contribute to a violation of an applicable WQS. Attachment A contains a table with the dates on which storm water discharges from the Facility since the 2008-2009 Wet Season exceed a WQS.

The exceedances of CTR limits and the Basin Plan WQSs demonstrate that the Fontana Facility Owners and/or Operators have violated and continue to violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2). Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that they violate Receiving Water Limitation C(1) and/or

---

[10] WQS include pollutant concentration levels determined by the State Water Resources Control Board and the EPA to be protective of the Beneficial Uses of the Receiving Water. Discharges above WQS contribute to the impairment of the Receiving Water' Beneficial Uses.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 9 of 17

Receiving Water Limitation C(2) each time storm water discharges from the Facility containing pollutants that adversely affect human health or the environment and/or cause or contribute to a violation of an applicable WQS including, but not limited to, the dates identified in Attachment A. Each time that discharges of storm water from the Fontana Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Each time that discharges of storm water from the Fontana Facility cause or contribute to a violation of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and Waterkeeper will update the dates of violation when additional information and data becomes available. The Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

### C. Unauthorized and Authorized Non-Storm Water Discharges from the Fontana Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit

Except as authorized by Special Conditions D(1) of the Storm Water Permit, Discharge Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

Information available to Waterkeeper indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges. For example, Waterkeeper investigators observed non-storm water discharging from the covered vehicle maintenance area in the northeast corner of the Facility to one of the drain outlets along Cherry Avenue. These non-storm water discharges resulting from cleaning and washing operations are not from sources that are listed among the authorized non-storm water discharges in Special Conditions D(1) of the Storm Water Permit and thus are always prohibited without a separate NPDES permit. Information available to Waterkeeper indicates that the Fontana Facility Owners and/or Operators have not obtained a separate NPDES permit for the Facility's unauthorized non-storm water discharges, as thus these discharges are in violation of Discharge Prohibition A(1) of the Storm Water Permit.

Certain non-storm water discharges are allowed, such as fire hydrant flushing, drinking fountain water, and landscape watering, only if all requirements under Special Conditions D(1) of the Storm Water Permit are met. Special Conditions D(1) requires, among other things, the development and implementation of BMPs, which must be specifically listed in the SWPPP, to prevent or reduce the contact of non-storm water discharges with significant materials or equipment. The non-storm water discharges also cannot contain significant quantities of pollutants. Thus, even the non-storm water discharges listed in Special Condition D.1, such as irrigation drainage, which are consistently observed at the Facility (*see e.g.* 2010-2011 Annual Report), are prohibited because the Fontana Facility Owners and/or Operators have not developed or implemented the required BMPs to prevent pollutant exposure to the non-storm

water, and are not otherwise in compliance with the Special Conditions D(1) that would authorize such discharges. These non-storm water discharges are not authorized by a separate NPDES permit or subject to Special Condition D(1). Therefore, the Fontana Facility Owners and/or Operators are in violation of the Storm Water Permit for these prohibited non-storm water discharges.

Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that Discharge Prohibition A(1) of the Storm Water Permit is violated each time non-storm water is discharged from the Fontana Facility. These discharge violations are ongoing and will continue until the Fontana Facility Owners and/or Operators develop and implement BMPs that prevent prohibited non-storm water discharges, or obtain separate NPDES permit coverage. Each time the Fontana Facility Owners and/or Operators discharge prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

### D.  Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan

Section A(1) and Provision E(2) of the Storm Water Permit requires dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9). The SWPPP must also be revised as necessary to ensure compliance with the Storm Water Permit. *Id.,* Sections A(9) and A(10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other information, the SWPPP must include: identification of individual(s) and their responsibilities in developing, implementing, and revising the facility's SWPPP (*see* Storm Water Permit Section A(3)(a)); a site map with information including storm water drainage areas with flow patterns, nearby water bodies, and the location of the storm water collection and conveyance system and associated points of discharge (*see id.,* Section A(4)); and a list of significant materials handled and stored at the facility (*see id.,* Section A(5)). Sections A(7) and A(8) require an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 11 of 17

Information available to Waterkeeper indicates that the Fontana Facility Owners and/or Operators began conducting operations without developing a SWPPP. Even after developing a SWPPP, the Fontana Facility Owners and/or Operators are conducting operations at the Facility with an inadequately developed, implemented, and/or revised SWPPP. For example, the Regional Board has inspected the Facility and no SWPPP was produced in response to the Board's request. Further, the Regional Board has sent notices to the Fontana Facility Owners and/or Operators noting the inadequacy of BMPs and thus the need to develop additional BMPs and revise the SWPPP. Yet information available to Waterkeeper indicates that the Fontana Facility Owners and/or Operators developed only one SWPPP in 2009, and it fails to incorporate all requirements of the Storm Water Permit, is not properly implemented, and has never been revised. The Fontana Facility Owners and/or Operators have failed and continue to fail to develop and/or implement a SWPPP that contains BMPs to prevent the exposure of pollutant sources to storm water and the subsequent discharge of polluted storm water from the Fontana Facility.

In addition, the Fontana Facility SWPPP fails to identify the significant materials handled and stored at the Facility. The Fontana Facility SWPPP indicates that a list of significant materials that may come into contact with storm water is included in Worksheet No. 2 in Appendix B of the SWPPP. However, the Worksheet No. 2 attached to the SWPPP is blank. Therefore, in violation of Section A(5), the Fontana Facility Owners and/or Operators failed to include in their SWPPP a list of significant materials handled and stored at the Facility.

The SWPPP for the Fontana Facility fails to include an adequate site map. The site map fails to include all of the requirements of the SWPPP, such as an outline of storm water drainage areas and identification of all discharge points associated with the storm water collection and conveyance system. The SWPPP is therefore not in compliance with Section A(4).

Another example of the inadequacy of the SWPPP is its failure to identify the current storm water pollution prevention team, in violation of Section A(3)(a). In their 2012–2013 Annual Report, the Fontana Facility Owners and/or Operators even note that, "[t]he SWPPP pollution prevention team needs to be revised to include current onsite personnel."

Waterkeeper puts the Fontana Facility Owners and/or Operators on notice that they violate Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act every day that they operate the Fontana Facility with an inadequately developed, implemented, and/or revised SWPPP. Every day that the Fontana Facility Owners and/or Operators operate the Fontana Facility with an inadequately developed, implemented, and/or revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Fontana Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's SWPPP requirements. These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 12 of 17

### E.  Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program

Section B(1) and Provision E(3) of the Storm Water Permit requires facility operators to develop and implement a monitoring and reporting plan ("M&RP") by October 1, 1992, or when industrial activities begin at the facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effective, and are evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. Dischargers must revise and update the M&RP to reflect current BMPs, and as otherwise required by the Storm Water Permit. *See id., see also id.,* Section B(4).

Sections B(3) through B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges during the first hour of discharge at each discharge point of at least one storm event per month during the Wet Season.[11] Sections B(3) and (4) further require dischargers to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor and the source of any pollutants when conducting visual observations. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. *Id.,* Sections B(3) and (4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers to collect samples of storm water discharges from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the Fontana Facility Owners and/or Operators are required to collect at least two samples from each discharge point during each Wet Season, including one sample from the first storm event of the Wet Season. These samples must be taken during the first hour of discharge. Storm water samples shall be analyzed for TSS, pH, specific conductance, and total organic carbon or O&G. Storm Water Permit Section B(5)(c)(i). These samples shall also be analyzed for toxic pollutants and other pollutants that are likely to be present in storm water discharges in significant quantities. *Id.,* Section B(5)(c)(ii). Finally, as a sector K SIC code 4953, the Fontana Facility Owners and/or Operators are required to analyze their samples for Ammonia (NH3); Magnesium (Mg); Chemical Oxygen Demand (COD); Arsenic (As); Cadmium (Cd); Cyanide (CN); Lead (Pb); Mercury (Hg); Selenium (Se) and; Silver (Ag). *See id.,* Section B(5)(c)(iii); *see also id.,* Table D.

The Fontana Facility Owners and/or Operators have been conducting operations at the Fontana Facility with an inadequately developed, implemented, and/or revised M&RP. For

---

[11] The Wet Season is defined from October 1 through May 31.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 13 of 17

example, the Fontana Facility Owners and/or Operators fail to analyze storm water samples for all Table D pollutants listed above. In fact, the SWPPP lists many of these pollutants as being associated with industrial activities, and some sample result worksheets in the Facility's Annual Reports list some of these pollutants, but the storm water samples are not actually analyzed for these parameters. In addition, the Fontana Facility Owners and/or Operators have not sampled for pollutants likely to be present in discharges in significant quantities. Information available to Waterkeeper indicates that pathogens, including *Escherichia coli* and coliform bacteria, are likely to be present in significant quantities in storm water runoff from solid waste vehicle and equipment maintenance facilities such as the Fontana Facility. In sum, the Fontana Facility Owners and/or Operators fail to analyze their samples as required in violation of Section B(5)(c) of the Storm Water Permit.

Second, the Fontana Facility Owners and/or Operators fail to collect storm water samples from each of the Facility's discharge points, as required by Section B(5) and Section B(7) of the Storm Water Permit. For example, information available to Waterkeeper indicates that there are several discharge points at the Facility, but as of the 2012-2013 Wet Season storm water samples are collected from only one discharge point. The Regional Board also notified the Fontana Facility Owners and/or Operators that they are not collecting storm water from each discharge location. The Fontana Owners' and/or Operators' failure to collect storm water samples from every discharge point is a violation of Sections B(5) and B(7) of the Storm Water Permit.

Third, the Fontana Facility Owners and/or Operators do not consistently collect samples from two storm events per Wet Season or from the first storm event of the year, as required. For example, information available to Waterkeeper indicates that neither requirement was met for the 2009-2010 Wet Season. These failures are violations of Section B(5)(a) of the Storm Water Permit.

The Fontana Facility Owners and/or Operators fail to conduct quarterly visual observations of unauthorized and authorized non-storm water discharges, and fail to conduct monthly observations of storm water discharges, as required by Sections B(3) and B(4) of the Storm Water Permit. For example, no observations of either authorized or unauthorized non-storm water discharges were reported in the Facility's 2007-2008, 2008-2009 and 2009-2010 Annual Reports. In other Annual Reports for the Facility, visual observations that were reported do not provide the information required by the Storm Water Permit, and are not conducted at each discharge location as required.

Additionally, the Fontana Facility Owners and/or Operators failed to report monthly visual observations of storm water discharges in the Facility's 2007-2008, 2008-2009, 2009-2010, and 2010-2011 Annual Reports.[12] The Wet Season visual observations in 2011-2012 and 2012-2013 Annual Reports are incomplete and are not conducted at each discharge point as required. Because the Fontana Facility Owners and/or Operators failed to take visual observations as required, they also failed to document the presence of any floating or suspended

---

[12] The Fontana Facility Owners and/or Operators partially filled out visual observation forms in 2010-2011 Annual Report, but these forms document that all Wet Season observations were conducted when there was no storm water discharges.

material, O&G, discolorations, turbidity, odor, or the source of any pollutants, in violation of Sections B(3) and B(4) of the Storm Water Permit.

The Fontana Facility Owners' and/or Operators' failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that they have failed to develop, implement, and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. The Fontana Facility Owners and/or Operators have been, and will continue to be, in violation of the Storm Water Permit's M&RP requirements each day they operate with an inadequately developed, implemented, and/or revised M&RP. Every day that the Fontana Facility Owners and/or Operators conduct operations with an inadequately developed, implemented, and/or revised M&RP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

**F.  Failure to Comply with the Storm Water Permit's Reporting Requirements**

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. The Storm Water Permit, in relevant part, requires that the Annual Report include the following: 1) a summary of visual observations and sampling results, 2) an evaluation of the visual observation and sampling and analysis results and the laboratory reports; and 3) the Annual Comprehensive Site Compliance Evaluation Report. Section B(14). As part of the Annual Comprehensive Site Compliance Evaluation, the facility operator shall review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. *See* Storm Water Permit Section A(9). The Annual Report shall be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of their knowledge. *See* Storm Water Permit, Sections B(14), C(9), and C(10).

The Fontana Facility Owners and/or Operators fail to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, since the 2008-2009 Annual Report, the Fontana Facility Owners and/or Operators certified that: (1) a complete Annual Comprehensive Site Compliance Evaluation was done pursuant to Section A(9) of the Storm Water Permit; (2) the SWPPP's BMPs address existing potential pollutant sources; and (3) the SWPPP complies with the Storm Water Permit, or will otherwise be revised to achieve compliance. However, information available to Waterkeeper indicates that these certifications are erroneous. For example, none of the Annual Reports since the 2008-2009 submittal have been signed, indicating that the required Annual Comprehensive Site Compliance Evaluation was not conducted, and that the information in the Annual Reports has not been certified as required.

The Fontana Facility Owners and/or Operators have also submitted incomplete Annual Reports. For instance, many of the Annual Report's forms used to document visual observations are left blank, and laboratory reports of sample analysis have not been submitted as required. In

Notice of Violation and Intent to File Suit
October 8, 2013
Page 15 of 17

addition, the facility operator must report any noncompliance at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance and, if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 3) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d). The Fontana Owners and/or Operators do not report their non-compliance as required.

Each of the failures to report as required is a violation of the Storm Water Permit, and indicates a continuous and ongoing failure to comply with the Storm Water Permit's reporting requirements. The Fontana Facility Owners and/or Operators have been, and will continue to be, in daily and continuous violation of the Storm Water Permit's reporting requirements until their reporting complies with the Permit. Every day that the Fontana Facility Owners and/or Operators operate the Fontana Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The Fontana Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

## IV.   RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $32,500 per day per violation for all Clean Water Act violations between March 15, 2004 and January 12, 2009, and $37,500 per day per violation for all Clean Water Act violations after January 12, 2009. In addition to civil penalties, Waterkeeper will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Waterkeeper will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 16 of 17

V.    **CONCLUSION**

     Waterkeeper is willing to discuss effective remedies for the violations described in this Notice Letter. However, upon expiration of the 60-day notice period, Waterkeeper will file a citizen suit under Section 505(a) of the Clean Water Act for Union Pacific's violations of the Storm Water Permit. Please direct all communications to Waterkeeper's legal counsel:

          Daniel Cooper
              daniel@lawyersforcleanwater.com
          Layne Friedrich
              layne@lawyersforcleanwater.com
          Lawyers for Clean Water, Inc.
          1004-A O'Reilly Avenue
          San Francisco, California 94129
          Tel: (415) 440-6520

Sincerely,

*Garry Brown*

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
October 8, 2013
Page 17 of 17

## SERVICE LIST

<u>VIA U.S. MAIL</u>

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

# Attachment A: Table of Storm Water Sampling Data at the Fontana Facility Demonstrating Storm Water Permit Violations

| Sampling Location[1] | Sampling Date | Parameter | Sample Result | Units | Benchmark | Magnitude of Benchmark Exceedance |
|---|---|---|---|---|---|---|
| Site 1 | 11/30/07 | SC | 1000 | umhos/cm | 200 | 5 |
| Site 1 | 11/30/07 | TSS | 180 | mg/L | 100 | 1.8 |
| Site 2 | 11/30/07 | O & G | 75 | mg/L | 15 | 5 |
| Site 2 | 11/30/07 | SC | 820 | umhos/cm | 200 | 4.1 |
| Site 2 | 11/30/07 | TSS | 1900 | mg/L | 100 | 19 |
| Site 2 | 12/19/07 | O & G | 45 | mg/L | 15 | 3 |
| Site 2 | 12/19/07 | SC | 260 | umhos/cm | 200 | 1.3 |
| Site 2 | 12/19/07 | TSS | 750 | mg/L | 100 | 7.5 |
| Site 1 | 11/26/08 | SC | 210 | umhos/cm | 200 | 1.05 |
| Site 2 | 11/26/08 | O & G | 54 | mg/L | 15 | 3.6 |
| Site 2 | 11/26/08 | TSS | 260 | mg/L | 100 | 2.6 |
| Site 1 | 12/15/08 | O & G | 23 | mg/L | 15 | 1.53 |
| Site 1 | 12/15/08 | TSS | 180 | mg/L | 100 | 1.8 |
| Site 2 | 12/15/08 | O & G | 59 | mg/L | 15 | 3.93 |
| Site 2 | 12/15/08 | TSS | 220 | mg/L | 100 | 2.2 |
| Site 2 | 1/19/10 | O & G | 33 | mg/L | 15 | 2.2 |
| Site 2 | 1/19/10 | TSS | 810 | mg/L | 100 | 8.1 |
| Site 1 | 11/20/10 | SC | 220 | umhos/cm | 200 | 1.1 |
| Site 1 | 2/16/11 | TSS | 510 | mg/L | 100 | 5.1 |
| MP#1 | 10/5/11 | SC | 340 | umhos/cm | 200 | 1.7 |
| MP#1 | 10/5/11 | TSS | 110 | mg/L | 100 | 1.1 |
| MP#1 | 2/27/12 | O & G | 17 | mg/L | 15 | 1.13 |
| MP#1 | 2/27/12 | SC | 270 | umhos/cm | 200 | 1.35 |

[1] The Fontana Facility Owners and/or Operators use inconsistent terms in their Annual Reports and their SWPPP to identify sampling locations. Samples were taken at points identified in Annual Reports variously as "Site 1," "Site 2," "MP1," and "MP #1." Neither the SWPPP nor the Annual Reports use these terms or include descriptions of where samples were taken.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Virginia A. Phillips _____ and the assigned Magistrate Judge is _____ David T. Bristow _____ .

The case number on all documents filed with the Court should read as follows:

## EDCV14-00073 JGB (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

January 13, 2014
Date

By   L. Murray
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☒ **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper; ORANGE COUNTY COASTKEEPER, a California non-profit corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

BURRTEC WASTE GROUP, INC., a California corporation; BURRTEC WASTE INDUSTRIES, INC., a California corporation

**(b)** County of Residence of First Listed Plaintiff   Riverside
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Bernardino
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Daniel Cooper (Bar No. 153576)
Lawyers for Clean Water, Inc.
1004A O'Reilly Avenue, San Francisco, California, 94129
(415) 440-6250

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
33 U.S.C. §§ 1251 et seq. (Clean Water Act); discharges of pollutants in violation of the Clean Water Act and California Permit for Discharges of Stormwater Associated with Industrial Activities

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

ED   CV  14      00072 5   JGB

**FOR OFFICE USE ONLY:**     Case Number:

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No | [ ] Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [X] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |

**C.1.  Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true? If so, check the one that applies:**

[X] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above. ➡ | EASTERN DIVISION |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

    if yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO   ☐ YES

    if yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

    ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _Caroline Koch_     DATE: _12/16/2013_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |